## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

EBONI WILLIAMS, DEBBIE
SHOEMAKER, PAULA MAYS, TINA
KOVELESKY, and SHADRIN
HERRING, as representatives of a class
of similarly situated persons, and on
behalf of the A360, Inc. Profit Sharing
Plan, formerly known as the A360, Inc.
Employee Stock Ownership Plan,

              Plaintiffs,

    v.

GERALD SHAPIRO, SCOTT
BRINKLEY, ARGENT TRUST
COMPANY, A360 HOLDINGS LLC,
and John and Jane Does 1-10,

              Defendants.

Case No. 1:23-cv-03236-VMC

## DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL
## ARBITRATION AND TO STAY PURSUANT TO
## SECTIONS 3 AND 4 OF THE FEDERAL ARBITRATION ACT
## <u>AND INCORPORATED MEMORANDUM OF LAW</u>

Defendants Argent Trust Company ("Argent"), Gerald Shapiro, Scott Brinkley, and A360 Holdings LLC renew their Motion to Compel Arbitration and to Stay (ECF No. 44) because Plaintiffs' putative class action Complaint is subject to binding arbitration on an individual basis.[1]

This case involves an employee stock ownership plan ("ESOP"), which is a defined contribution plan regulated by the Employee Retirement Income Security Act of 1974 ("ERISA") that allows participating employees to acquire a beneficial interest in the stock of their employer.  Congress intended ESOPs to provide a tax-favored way for employers to fund retirement benefits and serve as a "technique of corporate finance" to foster employee ownership.  *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1278 (11th Cir. 2012) (citation omitted).

Plaintiffs allege they are participants in the A360, Inc. Employee Stock Ownership Plan (the "Plan") and Defendants engaged in various breaches of ERISA that caused their Plan accounts and the Plan accounts of other Plan participants to lose value.  (Am. Compl. (ECF No. 69) ¶¶ 1, 26-30, 121-162).

---

[1] This Motion is treated as a Rule 12(b) motion.  *Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 376 F. Supp. 3d 1298, 1304 (S.D. Fla. 2019).  However, Defendants request a stay, rather than a dismissal, pending arbitration.  9 U.S.C. § 3; *see Webb v. DoorDash, Inc.*, 451 F. Supp. 3d 1360, 1370 (N.D. Ga. 2020) (staying litigation pending arbitration).

Plaintiffs seek to assert ERISA claims "on behalf of the [Plan]" to remedy "Defendants' [alleged] unlawful conduct and obtain compensatory and equitable relief for the [Plan] and [all of] its participants."  (*Id.* ¶ 1).

The Plan, as amended,[2] requires that any claim asserting a violation of ERISA or that arises out of, relates to, or concerns the Plan, must be pursued exclusively in individual arbitration, not in federal court.  (Brinkley Decl. Exs. 4, 5 at § 19.1).  The Court should apply the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and Eleventh Circuit precedent to grant Defendants' motion to compel individual arbitration and stay the case because:  (i) the arbitration provision in the Plan is valid and binding on Plaintiffs; and (ii) all of Plaintiffs' claims are "Covered Claims" that fall within the scope of the Plan's arbitration provision.

Following Defendants' original Motion to Compel Arbitration and to Stay (ECF No. 44), Plaintiffs filed an amended complaint.  (ECF No. 69).  In new Count VII, the amended complaint seeks to invalidate the Plan amendment that both terminated the Plan and added the arbitration provision ("Amendment Three")

---

[2]   A true and correct copy of the Plan and its amendments, which the Court may consider on a motion to compel arbitration, *Jordan v. Equifax Info. Servs., LLC*, No. 320CV00199TCBRGV, 2021 WL 4988315 at *1 n.5 (N.D. Ga. July 21, 2021), are attached to the Declaration of Scott Brinkley ("Brinkley Decl."), filed at ECF No. 44-1.  The Plan specifies the A360, Inc. Board of Directors may amend the Plan at any time.  (Brinkley Decl. Ex. 1 at § 13.1).

on the ground that it violates the Plan's anti-inurement clause. Because Amendment Three is invalid according to Plaintiffs, a subsequent amendment ("Amendment Four"), which clarified that the arbitration provision does not prevent injunctive relief that would have a plan-wide effect, is likewise invalid. Plaintiffs are wrong. Amendments Three and Four are enforceable and this case should be sent to arbitration.

## BACKGROUND

**A.     Background Regarding A360, Inc. And Plaintiffs' Claims.**

Defendant Shapiro founded A360, Inc. in 2016 and the Plan was created in 2017. (*Id.* ¶ 5). The Plan was terminated in 2019 pursuant to Plan Amendment Three. Plaintiffs allege various ERISA violations in connection with the termination of the Plan and the sale of the Plan's A360, Inc.'s stock.

**B.     Relevant Terms In The Plan Document.**

Plaintiffs allege they are current or former participants in the Plan. (*Id.* ¶¶ 26-30). Pursuant to the Plan, "Covered Claims [by Claimants] must be resolved exclusively pursuant to the provisions of this Section 19.1 (the "Arbitration Procedure")." (Brinkley Decl. Exs. 4, 5 at § 19.1). The Plan defines "Claimant" to include any "current or former Participant" and broadly defines the term "Covered Claim." (*See id.* at § 19.1(a)). As shown below, Plaintiffs are "Claimant[s]" and

3

all of their claims are "Covered Claims."

The Plan contains a "Class Action Waiver" that requires Covered Claims be arbitrated "solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis." (Brinkley Decl. Exs. 4, 5 at § 19.1(b)). The Plan provides that nothing in the Class Action Waiver "shall be construed to preclude a Claimant from seeking injunctive relief, including, for example, seeking an injunction to remove or replace a Plan fiduciary even if such injunctive relief has an incidental impact on an individual or entity other than the Claimant." (Brinkley Decl. Ex. 5 at § 19.1(b).).

## **ARGUMENT**

### A.   **Plaintiffs Should Be Compelled To Arbitrate All Of Their Claims.**

In the FAA, Congress enshrined "a liberal federal policy favoring arbitration" that was designed to counteract prior "widespread judicial hostility to arbitration". *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 346 (2011). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 344. Thus, federal courts "must rigorously enforce arbitration agreements," including for "claims that allege a violation of a federal statute." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted).

4

According to the FAA and Supreme Court precedent, enforcement of arbitration agreements is mandatory: the FAA states that arbitration agreements "shall be valid, irrevocable, and enforceable," 9 U.S.C. § 2; courts must compel arbitration "in accordance with the terms of the agreement" upon motion of either party, *id.* § 4; and courts faced with such a motion must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Id.* § 3; *accord AT&T Mobility*, 563 U.S. at 344.  In determining whether to compel arbitration, courts consider: "(1) whether there is a valid agreement to arbitrate, and (2) whether the agreement covers the dispute." *Webb,* 451 F. Supp. 3d at 1365.  "Any doubt related to arbitrability should be resolved in favor of arbitration."  *Id.* (citation and quotation marks omitted).

1.    **The Plan's Arbitration Procedure Is A Valid Arbitration Agreement.**

The Court must first consider "whether there is a valid agreement to arbitrate between the parties."  *Id.*  The arbitration provision that Defendants seek to enforce is included in an ERISA-governed Plan document and ERISA directs courts to enforce plan documents as written.[3]  *See US Airways, Inc. v.*

---

[3]  Federal common law, not state law, governs the issue of whether the Plan's arbitration provision binds Plaintiffs, *see LeGras v. AETNA Life Ins. Co.*, 786 F.3d 1233, 1236 (9th Cir. 2015), because ERISA contains a broad state law preemption provision.  29 U.S.C. § 1144(a).

*McCutchen,* 569 U.S. 88, 100-101 (2013).  The written Plan document, including any arbitration provision, binds participants, beneficiaries, employees, and fiduciaries and governs all Covered Claims.  *See, e.g., Berkelhammer v. ADP TotalSource Group, Inc.* 74 F.4th 115, 120 (3d Cir. 2023) ("[T]he Plan's agreement to arbitrate is what matters, and that agreement applies to [plaintiffs' breach of fiduciary duty] claims on the Plan's behalf."); *Holmes v. Baptist Health S. Fla., Inc.*, No. 21-22986-CIV, 2022 WL 180638, at *4 (S.D. Fla. Jan. 20, 2022) ("[w]hile Plaintiff Holmes never agreed to arbitrate and was not put on notice of an agreement to arbitrate while she was a participant in the Plan, the Plan agreed to arbitration").[4]

Thus, it is of no consequence that Plaintiffs were not "notified" of Amendments Three and Four or that the Amendments came into effect after each Plaintiff had left employment.  (Am. Compl. ¶¶ 99, 105).  Plaintiffs assert their claims "on behalf of the [Plan]" (*id*. ¶ 1), and the Plan agreed to arbitrate. Following Plaintiffs' logic, Plan participants would always have an end run around arbitration agreements that are the product of amendment.  *See Best v. James*, 3:20-

---

[4]  By participating in a plan, each participant agrees to be bound by the terms of the plan document and the employer is bound to provide the benefits described in it. *See, e.g., Conley v. Pitney Bowes*, 34 F.3d 714, 717 (8th Cir. 1994) (a plan is a "bilateral contract (an agreement where promises of future performance are exchanged)").

CV-299-RGJ, 2023 WL 145007, at *4–5 (W.D. Ky. Jan. 10, 2023) (compelling

plaintiffs' ERISA § 502(a)(2) claims to arbitration where plan amendment

contained the agreement to arbitrate in order to avoid the "illogical result" that §

502(a)(2) claims would never be subject to arbitration unless the original plan

document included an arbitration clause).

Here, the Plan provides that any claim made by a Claimant "which arises out

of, relates to, or concerns this Plan . . . [or] assert[s] a breach of, or failure to

follow, any provision of ERISA . . . shall be resolved exclusively by binding

arbitration." (Brinkley Decl. Exs. 4, 5 at § 19.1(a)).[5]  The Supreme Court has held

that arbitrators are competent to interpret and apply federal law; thus, claims for

violations of a federal statute—including putative class actions or representative

claims brought under federal law—may be arbitrated unless "the FAA's mandate

has been overridden by a contrary congressional command."  *See Am. Exp.*, 570

U.S. at 233 (citation and quotation marks omitted).  The Supreme Court also has

observed that "[i]n many cases over many years, this Court has heard and rejected

efforts to conjure conflicts between the [FAA] and other federal statutes" and

---

[5]  That the Plan's Arbitration Procedure was added via amendment is irrelevant.
"ERISA provides an employer with broad authority to amend a plan."  *Hughes
Aircraft Co. v. Jacobson*, 525 U.S. 432, 442 (1999); Brinkley Decl. Ex. 1 at § 13.1
(providing that the Plan "may be amended at any time and from time to time by
action of the Board of Directors").

"[t]hroughout, we have made clear that even a statute's express provision for collective legal actions does not necessarily mean that it precludes 'individual attempts at conciliation' through arbitration." *Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1627 (2018) (citation omitted).

This means that the FAA applies to claims alleging violations of ERISA. No court has recognized any "clearly expressed congressional intention" in ERISA to override the FAA, nor any reason why ERISA should be unique among federal statutes as exempt from the Supreme Court's clear guidance in *American Express* and *Epic Systems*. To the contrary, courts inside and outside of the Eleventh Circuit have repeatedly held that ERISA claims are arbitrable. *See, e.g.*, *Louis v. Aetna Health Inc.*, No. 6:16-cv-1922-Orl-22DCI, 2017 WL 6939166, *3 (M.D. Fla. Jan. 13, 2017); *Hornsby v. Macon Greyhound Park, Inc.*, No. 3:10cv680-MHT, 2012 WL 2135470, *5 (M.D. Ala. June 13, 2012); *Secure Health Plans of Ga., LLC v. DCA of Hawkinsville, LLC,* No. 5:10-cv-417, 2010 WL 4823435, *4 (M.D. Ga. Nov. 22, 2010); *Dorman v. Charles Schwab Corp.,* 780 Fed. Appx. 510, 513-514 (9th Cir. 2019) (*Dorman II*) ("As every circuit to consider the question has held, ERISA contains no congressional command against arbitration, therefore an agreement to arbitrate ERISA claims is generally enforceable"; plaintiff

required to arbitrate ERISA claims on an individualized, not class, basis).[6]

### 2.   Plan Amendment Three is Valid.

Plaintiffs argue in their Amended Complaint that the Plan's arbitration provision is not valid because Amendment Three, which added the arbitration provision to the Plan, is not valid.  Plaintiffs claim this is so because the portion of Amendment Three terminating the ESOP transfers assets of the Plan for purposes other than providing benefits to participants in violation of Plan Section 13.1. [7] Plaintiffs are wrong.

Section 13.1 of the Plan states the following:

> 13.1   <u>Future of Plan</u>.   While it is the intention of the Company to continue the Plan indefinitely, the Company shall have the right to terminate the Plan at any time. The Plan may be amended at any time and from time to time by action of the Board of Directors or any person or persons to whom the Board of Directors may specify in writing; <u>provided, however</u>, that no such amendment or termination shall be effective which shall attempt to transfer assets of the Plan to purposes other than for the exclusive benefit of Participants and their Beneficiaries, or which shall cause or permit any assets of the Plan to

---

[6] *See also Williams v. Imhoff*, 203 F.3d 758, 767 (10th Cir. 2000) ("Congress did not intend to prohibit arbitration of ERISA claims"); *Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 122 (2d Cir. 1991) (enforcing agreement to arbitrate ERISA claims); *Pritzker v. Merrill Lynch*, 7 F.3d 1110, 1116 (3d Cir. 1993) (agreements to arbitrate ERISA claims are valid and enforceable); *Arnulfo P. Sulit Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 479 (8th Cir. 1988) (same); *Kramer v. Smith Barney*, 80 F.3d 1080, 1086 (5th Cir. 1996) (same); *VanPamel v. TRW Vehicle Safety Sys., Inc.*, 723 F.3d 664, 669 (6th Cir. 2013) (same).

[7] Plaintiffs do not assert that the portion of Amendment Three adding the arbitration provision runs afoul of Section 13.1 of the Plan.

revert to or become the property of the Company prior to the satisfaction of all liabilities of the Plan.

(Brinkley Decl. Ex. 1 at § 13.1). Section 13.1 generally provides that the Plan may be amended, but disallows amendments that "attempt to transfer assets of the Plan to purposes other than for the exclusive benefit of Participants and their Beneficiaries." (*Id*.) This carve-out language in the proviso clause is standard in ERISA plans and reflects ERISA's anti-inurement provision set forth in 29 U.S.C. §1103(c)(1). *Chait v. Bernstein*, 835 F.2d 1017, 1022 (3d Cir. 1988).

Plaintiffs assert that Amendment Three triggers this carve-out in Section 13.1 because "Amendment Three was conditioned on the liquidation of the ESOP's shares at less than fair market value for the benefit of Shapiro and Brinkley, and the execution of Amendment Three was likewise a condition of closing the deal." (Am. Compl. ¶ 99). But, the plain language of Section 13.1 only prohibits an "amendment" "which shall attempt to transfer assets of the Plan to purposes other than for the exclusive benefit of Participants." *Nothing* in Amendment Three purports to transfer (or attempts to transfer) any Plan assets to the Company, its executives, or the third-party buyer—the transfers about which Plaintiffs complain. Instead, Amendment Three simply terminates the ESOP and provides for a plan of distribution of the Trust's assets *to the participants*. The Section 13.1 carve-out does not apply here.

10

The Amended Complaint conflates the issue of whether *Amendment Three* is valid under Section 13.1 with whether the 2019 Transaction underlying Plaintiffs' complaint violated ERISA's exclusive benefit rule. But, whether the 2019 Transaction violated ERISA is an entirely different issue from the narrow one here of whether the arbitration provision in Amendment Three is valid. Plan Section 13.1 only speaks to amendments that transfer, or attempt to transfer, Plan assets for purposes other than for the exclusive benefit of participants. Amendment Three does not do that, it does not violate Section 13.1, and the arbitration provision in Amendment Three is therefore valid.

### 3.     The Plan's Arbitration Procedure Covers All Of Plaintiffs' Claims.

The Court must next determine whether Section 19.1 of the Plan "covers the dispute." *Webb*, 451 F. Supp. 3d at 1365. The language of the Plan makes clear that it does. The definition of "Covered Claim" in Section 19.1 provides:

> Any claim made by or on behalf of . . . *a current or former Participant . . . or by or on behalf of the Plan* . . . (a "Claimant") which arises out of, relates to, or concerns this Plan, the Trust Agreement, or the Trust, including without limitation, . . . *any claim asserting a breach of, or failure to follow, the terms of the Plan* or Trust Agreement or Trust; and *any claim asserting a breach of, or failure to follow, any provision of ERISA* or the Code, *including without limitation claims for breach of fiduciary duty*, . . . (collectively, "Covered Claims"), shall be resolved exclusively by binding arbitration . . . .

(Brinkley Decl. Exs. 4, 5 at § 19.1(a) (emphasis added)).

Here, Plaintiffs allege they are current or former participants in the Plan. (Am. Compl. ¶¶ 26-30). They also bring claims on behalf of the Plan. (*Id.* ¶¶ 107-109). As a result, each are "Claimants." Additionally, each Count of the Complaint asserts a violation of ERISA and Count VII asserts a failure to follow the terms of the Plan. All claims asserted by Plaintiffs are thus "Covered Claims."

**B.    Plaintiffs Must Arbitrate On An Individual Basis.**

**1.    The Court Should Resolve Any Dispute As To The Applicability Of The Plan's Class Action Waiver.**

The Plan contains a "Class Action Waiver" that provides "[a]ll Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis." (Brinkley Decl. Exs. 5 at § 19.1(b)). Section 19.1(b) also states "[e]ach arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary relief (whether such monetary relief is described as legal damages or equitable relief) to any individual or entity other than the Claimant." (*Id.*). Section 19.1(b) goes on to explain that Claimants may arbitrate claims under ERISA § 502(a)(2) as to their individual Plan accounts only, but clarifies that "nothing in this provision shall be construed to preclude a Claimant from seeking injunctive relief, including, for example, seeking an injunction to remove or

12

replace a Plan fiduciary even if such injunctive relief has an incidental impact on an individual or entity other than the Claimant."  (*Id.*)  Section 19.1(b) also states a court shall resolve any dispute "as to the applicability or validity" of the Class Action Waiver.  (*Id.*).

By filing this lawsuit as a putative class action in federal court, Plaintiffs are contesting the Class Action Waiver.  This Court needs to decide whether Plaintiffs' claims must be arbitrated on an individual basis before the case is sent to arbitration.  (*Id.*).

> ### 2.    Enforcement Of This Individual Arbitration Procedure—And Waiver Of Class Or Representative Arbitration—Is Required.

In considering whether claims should be submitted to arbitration on an individual or class-wide basis, the default rule is that claims are arbitrated on an individual basis.  The Supreme Court has explained that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."  *Stolt-Nielsen S.A. v. AnimalFeeds, Int'l Corp.*, 559 U.S. 662, 684 (2010) (emphasis in the original); *see also Epic Sys.,* 138 S. Ct. at 1623 (enforcing class action waiver).

Here, there is no agreement to arbitrate on a class-wide, group, or representative basis.  The Arbitration Procedure expressly precludes class, group, and representative arbitrations.  Accordingly, Plaintiffs should be compelled to

13

arbitrate their claims on an individual basis.

The Supreme Court has held repeatedly that individual arbitration provisions are enforceable even for claimants who seek to vindicate important statutory rights. *See Am. Exp.*, 570 U.S. at 233 (upholding individual arbitration of antitrust claims); *AT&T Mobility*, 563 U.S. at 344 (invalidating state law that required availability of class-wide arbitration and enforcing class arbitration waiver); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (upholding individual arbitration of age discrimination claims despite statute expressly allowing "collective" actions). These decisions reflect that enforcement of arbitration provisions "is a matter of contract" that courts "must 'rigorously enforce' . . . according to their terms[.]" *Am. Exp.*, 570 U.S. at 233 (citation omitted); *Dorman II*, 780 F. App'x at 514 ("Because 'arbitration is a matter of contract,' the Provision's waiver of class-wide and collective arbitration must be enforced according to its terms, and the arbitration must be conducted on an individualized basis.").

Further, in *Epic Systems*, the Supreme Court held that class action waivers in arbitration provisions are valid and enforceable because "[i]n the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." 138 S. Ct. at

14

1619.  The Supreme Court added that "[a] party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'a clearly expressed congressional intention' that such a result should follow[,]" and Congress's intention "must be 'clear and manifest.'"  *Id.* at 1624 (citation omitted).

Plaintiffs here cannot satisfy their "heavy burden" of showing a "clearly expressed congressional intention" that ERISA and the FAA cannot be harmonized.  While Plaintiffs seek to inject disharmony between ERISA §§ 502(a)(2) and 409, which provide a private right of action and remedies for an alleged breach of fiduciary duty,[8] and the FAA, which requires enforcement of the Plan's Arbitration Procedure, nothing in ERISA §§ 502 or 409 prohibits (or even references) arbitration.

Moreover, enforcing the Class Action Waiver would not affect the individual recovery that Plaintiffs (or any other Plan participant) could obtain under ERISA § 502(a)(2).  As an ESOP, the Plan is a defined contribution plan,

---

[8]  Plaintiffs are bringing suit under ERISA § 502(a)(2), which allows a participant to sue for "appropriate relief" under ERISA § 409.  ERISA § 409 provides that a breaching fiduciary shall be "personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary," and be "subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

meaning it "provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account." *Hughes Aircraft Co*., 525 U.S. at 439.  The Supreme Court has recognized that in the context of a defined contribution plan, ERISA § 502(a)(2) authorizes recovery for fiduciary breaches impacting a participant's *individual* account.  *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008).

If the Plan did not include the Arbitration Procedure and Class Action Waiver, and Plaintiffs managed to prove they were entitled to relief under § 502(a)(2) (which Defendants strongly dispute), they might ask the Court to determine an amount by which the Plan was damaged and allocate that amount among all participant accounts, including their own.  Plaintiffs could receive the exact same recovery in individual arbitration.

In a recent opinion, the Seventh Circuit cited the Supreme Court's decision in *LaRue* and reached this same conclusion.  *See Smith v. Bd. of Dirs. of Triad Mfg., Inc*., 13 F.4th 613 (7th Cir. 2021).  In *Smith*, the Seventh Circuit reviewed a lower court decision to deny a motion to compel arbitration (based on arbitration provisions in an ESOP plan document) on the grounds that a class action waiver "prohibited plan-wide statutory remedies that ERISA permits under [ERISA § 502(a)(2)], so it could not be enforced."  *Id.* at 616-17.  The Seventh Circuit

16

observed that individual arbitration is not "inherently incompatible with ERISA": "Because Smith participated in a defined contribution plan, *LaRue* . . . governs, and the Court made clear in *LaRue* that [ERISA § 502(a)(2), 29 U.S.C.] § 1132(a) 'authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account.'" *Id.* at 622 (citation omitted; emphasis omitted).  The Seventh Circuit's reasoning in *Smith* supports the conclusion that the Class Action Waiver here is enforceable.  This is because *Smith* recognized that ERISA claims for fiduciary breach may be brought on an <u>individualized</u> basis. <u>Individual</u> arbitration therefore fits squarely within that framework, and each participant will receive the same remedy in individual arbitration as he or she would receive in an individual court action.[9]

### 3.   Enforcement Of The Plan's Class Action Waiver Does Not Preclude Plaintiffs From Vindicating Their Rights Under ERISA.

Defendants anticipate that Plaintiffs will attempt to challenge the Class Action Waiver on the basis that it allegedly precludes them from effectively vindicating their alleged statutory rights under ERISA §§ 502(a)(2) and 409(a) to

---

[9] The *Smith* court ultimately affirmed the district court's denial of a motion to compel arbitration based on the "effective vindication" doctrine.  As discussed in Section II.B.3, *infra*, the Seventh Circuit's reasoning on this point should be rejected because the effective vindication doctrine does not apply.  And, even if it did, the language in the A360 arbitration provision is distinguishable from the at-issue language in the *Smith* provision.

represent absent Plan participants and seek relief on behalf of absent Plan participants' accounts.  Any such challenge lacks merit and should be rejected.

*First*, the Court should not apply the "effective vindication" doctrine here because requiring an ERISA claimant to arbitrate individually does not prevent the exercise of a substantive statutory right.  The "effective vindication" doctrine is a judge-made doctrine that the Supreme Court has recognized but never applied.  The doctrine provides that an arbitration provision may be unenforceable if it would prevent a party from pursuing ***substantive*** statutory remedies, but not ***procedural*** mechanisms for doing so.  *See Epic Sys.*, 138 S. Ct. at 1624–26; *Am. Exp.*, 570 U.S. at 236.  ERISA §§ 502(a)(2) and 409(a), however, do not bestow a ***substantive***, unwaivable right for individual participants to seek remedies on behalf of an entire plan or all of its plan participants.  Section 502(a)(2) provides that a civil action may be brought by an individual participant "for appropriate relief" under § 409. Section 409(a) describes consequences to a breaching fiduciary—*i.e*., they "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."  Nowhere in § 502(a)(2), where participant rights are described, nor in § 409(a) does ERISA provide that one participant has a ***substantive*** right to sue for

18

"all losses" to a plan or "all profits" of a breaching fiduciary.[10]

The Plan under which Plaintiffs claim they are entitled to benefits provides that "any losses" and "any profits" a breaching fiduciary would owe under § 409(a) must be sought and recovered by each Plan participant in individual arbitration with respect to his or her individual account.  (Brinkley Decl. Ex. 5 at § 19.1(b).)  In the aggregate, this would amount to complete relief for the entire Plan and all of its participants.  To the extent Plaintiffs might complain that arbitrations for losses to individual accounts would not be economical for all Plan participants to pursue, the Supreme Court has rejected such an argument as a basis for invalidating an arbitration provision, especially when the statute at issue (like ERISA) provides for an award of attorneys' fees to a prevailing plaintiff.  *See Am. Exp.*, 570 U.S. at 236 (even if the individual remedy is small and not worth pursuing, the plaintiff is not precluded from effectively vindicating his statutory remedy).

Multiple courts have rejected such a reading of §§ 502(a)(2) and 409(a) in the exact same context as presented in this case—*i.e.*, where a plan participant seeks to invalidate a class action waiver included in an ERISA plan document.  For

---

[10] More importantly, these Sections do not provide that such a right, even if it existed, could not be waived by a plan provision requiring individual arbitration of ERISA § 502(a)(2) claims.  As discussed herein, this alleged **procedural** (as opposed to **substantive**) right can be waived.

example, citing *LaRue*, the Ninth Circuit recognized that "[a]lthough § 502(a)(2) claims seek relief on behalf of a plan, the Supreme Court has recognized that such claims are inherently individualized when brought in the context of a defined contribution plan like that at issue." *Dorman II,* 780 F. App'x at 514 ("Because 'arbitration is a matter of contract,' the Provision's waiver of class-wide and collective arbitration must be enforced according to its terms, and the arbitration must be conducted on an individualized basis." (citation omitted)).  The Seventh Circuit likewise observed in *Smith* that requiring individual arbitration is not "inherently incompatible with ERISA" because, per *LaRue*, § 502(a)(2) "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."  *Smith*, 13 F.4th at 622 (citation omitted; emphasis omitted).

Similarly, in *Holmes*, a sister district court was presented with the issue of whether an ERISA plan's class action waiver, which precluded plan participants from bringing § 502(a)(2) claims in arbitration on a class, group, or representative basis and from receiving relief that provided "additional benefits or monetary relief to any other person," prevented the effective vindication of rights allegedly guaranteed in ERISA §§ 502(a)(2) and 409(a).  *Holmes*, 2022 WL 180638, at *1-2. The *Holmes* court noted that the plaintiffs had not identified any cases in which the

20

Eleventh Circuit applied the "effective vindication" doctrine to void an arbitration clause and noted "the Eleventh Circuit has expressed a hesitancy to do so." *See id.* at *2 (citing *Sierra v. Cruise Ships Catering and Servs., N.V*., 631 F. App'x 714, 718 (11th Cir. 2015) (declining to apply the effective vindication doctrine)). *Holmes* also recognized "the Eleventh Circuit has already held that a waiver of the right to bring a class action in arbitration is permissible, the concomitant waiver of remedies associated with class actions is also permissible." *Id.* at *3.

Some courts have recently found that a class action waiver contained in a plan document is unenforceable because they believed the language in ERISA §§ 502(a)(2) and 409 gave participants a **substantive** right that cannot be waived (as opposed to **procedural** right that can be waived) to seek relief on behalf of a plan's absent participants and their plan accounts. *See, e.g. Harrison v. Envision Management Holding, Inc. Bd. of Directors*, 59 F.4th 1090, 1107 (10th Cir. 2023). The reasoning in these cases is misguided and fails to address (1) the Supreme Court's decision in *Viking River Cruises*,[11] and (2) the significant majority of cases finding that plan participants cannot pursue relief on behalf of the plan's absent

---

[11] In *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1924-25 (2022), the Supreme Court held that representative claims that seek to join together the claims of individual claimants can be prohibited in the face of a provision that requires individual arbitration.  That is exactly the issue here.

participants or their accounts without first satisfying some ***procedural***

***requirement***, like Rule 23 or Rule 19, to protect the interests of the absent plan

participants.  *Wagner v. Stiefel Labs., Inc.*, No. 1:12-CV-3234-MHC, 2015 WL

4557686, at *13 (N.D. Ga. June 18, 2015) (concluding that individual plaintiffs

lacked standing to pursue claim on behalf of the plan for absent plan participants

because plaintiffs "have done nothing to notify or otherwise involve other Plan

participants"); *Coan v. Kaufman*, 457 F.3d 250, 259 (2d Cir. 2006) (finding ERISA

claim failed because an action could not "be brought in a 'representative capacity

on behalf of the plan' if the plaintiff does not take any steps to become a bona fide

representative of other interested parties" (citation omitted)).[12]

The failure to acknowledge *Wagner*, *Coan*, and similar cases is significant

because those cases make clear that the right of a participant to seek relief on

behalf of an entire plan, including absent plan participants and their accounts, is

predicated on satisfying certain procedural requirements.  Given that a participant's

right to seek relief on behalf of absent plan participants and their plan accounts is

not absolute and instead is predicated on satisfying procedural requirements, like

---

[12] *See also Dorman II,* 780 Fed. Appx. at 514; *Robertson v. Argent Tr. Co.,* No.
CV-21-01711, 2022 WL 2967710, at *10 (D. Ariz. July 27, 2022); *Best,* 2023 WL
145007, at *4–5; *Holmes,* 2022 WL 180638, at *4; *Ducharme v. DST Sys., Inc.*,
No. 4:17-CV-00022, 2017 WL 7795123, *1 (W.D. Mo. June 23, 2017).

Rule 23, it necessarily follows that the right to seek plan-wide relief on behalf of absent plan participants and/or their plan accounts **cannot** be a substantive right.  If it were, no additional procedural requirements would be necessary in order for a plan participant to exercise this right to pursue plan-wide relief.  This reasoning is completely in line with the Supreme Court's decisions finding that class action waivers in arbitration agreements are enforceable.  *See, Am. Exp.*, 570 U.S. at 234-235 ("One might respond, perhaps, that federal law secures a nonwaivable *opportunity* to vindicate federal policies by satisfying the procedural strictures of Rule 23 or invoking some other informal class mechanism in arbitration.  But we have already rejected that proposition in *AT&T Mobility*.").

*Second*, to the extent this Court concludes arbitration clauses mandating individual arbitration of ERISA claims implicates a substantive right (and thus the effective vindication doctrine), the doctrine still does not apply here based on the language of the Plan's Class Action Waiver.  In *Holmes*, another district court in the Eleventh Circuit found that the effective vindication doctrine did not apply because it concluded that the class action waiver there only prohibited relief that provided "additional benefits or monetary relief to any person" other than the claimant.  *Holmes*, 2022 WL 180638, at *1-2.  It did not preclude injunctive relief that would have a plan-wide effect, such as the ability to seek removal of the

23

Plan's fiduciaries.  Given that the class action waiver allowed each of the

individual claimants both to recover the harm to their individual accounts and to

recover Plan-wide injunctive relief, the court found that the class action waiver did

not interfere with the effective vindication of ERISA rights and compelled the

plaintiffs into individual arbitration.  *Id*. at *3.

Here, like *Holmes*, the Class Action Waiver only prohibits relief that would

provide additional *monetary* benefits to a person other than the claimant.  (Brinkley

Decl. Ex. 5 at § 19.1(b) ("Claimant may not seek or receive any remedy which has

the purpose or effect of providing additional benefits or monetary relief . . . .")).

Injunctive relief that would have a plan-wide impact is **<u>not</u>** barred:

"Notwithstanding the foregoing, nothing in this provision shall be construed to

preclude a Claimant from seeking injunctive relief, including, for example, seeking

an injunction to remove or replace a Plan fiduciary even if such injunctive relief

has an incidental impact on an individual or entity other than the Claimant."[13] (*Id.*).

Because the Class Action Waiver has a narrow prohibition against

---

[13] This particular language distinguishes the A360 Plan from those in other cases where courts have concluded that arbitration clauses in ESOP plan documents are not enforceable.  *See e.g.*, *Smith*, 13 F.4th at 615; *Harrison v. Envision Management Holding, Inc. Board of Directors*, 59 F.4th 1090, 1106-1107 (10th Cir. 2023); *Henry v. Wilmington Trust NA*, No. 21-2801, 2023 WL 4281813 (3rd Cir. June 30, 2023).

"additional benefits or monetary relief" to any individual other than the Claimant but also allows plan-wide injunctive relief, this Plan's Class Action Waiver does not prevent the Plaintiffs from pursuing any substantive statutory remedies. Rather, the Class Action Waiver delineates an arbitration procedure that Plaintiffs can utilize to effectively vindicate their rights under ERISA § 502(a)(2), while giving effect to the freedom to arbitrate in accordance with the FAA. *See Epic Sys.*, 138 S. Ct. at 1624 ("When confronted with two Acts of Congress allegedly touching on the same topic, this Court is not at liberty to pick and choose among congressional enactments and must instead strive to give effect to both." (citation and quotation marks omitted)).

## C.     The Court Should Award Defendants Their Fees And Expenses.

The Plan provides for an award of attorneys' fees and expenses if a Claimant "makes an unsuccessful challenge to the validity, enforceability or scope of the Arbitration Procedure" in court.  (Brinkley Decl. Exs. 4, 5 at § 19.2).  Plaintiffs' filing of this lawsuit in court is an unsuccessful challenge to the Arbitration Procedure; Defendants should be awarded their attorneys' fees and expenses.

WHEREFORE, Defendants respectfully request that the Court compel individual arbitration, stay the case, and award Defendants their legal expenses.

Respectfully submitted this 15th day of September, 2023.

**ARGENT TRUST COMPANY**

By:___s/ Todd D. Wozniak_____

Todd D. Wozniak
HOLLAND & KNIGHT LLP
Regions Plaza
1180 West Peachtree Street NW
Suite 1800
Atlanta, GA 30309
Telephone:  404-817-8500
todd.wozniak@hklaw.com
Georgia Bar No. 777275

Chelsea Ashbrook McCarthy
HOLLAND & KNIGHT LLP
150 N. Riverside Plaza Suite 2700
Chicago, Illinois 60606
Telephone: 312-715-5768
chelsea.mccarthy@hklaw.com
*Admitted pro hac vice*

**GERALD SHAPIRO, SCOTT
BRINKLEY, A360 HOLDINGS
LLC**

By:___s/ Lea C. Dearing_____

Benjamin I. Fink (GA Bar No. 261090)
Lea C. Dearing (GA Bar No. 922882)
BERMAN FINK VAN HORN P.C.
3475 Piedmont Road NE
Suite 1640
Atlanta, GA 30305
Telephone: 404-261-7711
bfink@bfvlaw.com
ldearing@bfvlaw.com

Eileen Ridley*
FOLEY & LARDNER LLP
555 California St., 17th Floor
San Francisco, California 94104
Telephone:  415-438-6469
eridley@foley.com

Bryan B. House*
FOLEY & LARDNER LLP
777 East Wisconsin Ave.
Milwaukee, Wisconsin 53202
Telephone:  414-297-5554
bhouse@foley.com
 *Admitted pro hac vice*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

EBONI WILLIAMS, DEBBIE
SHOEMAKER, PAULA MAYS, TINA
KOVELESKY, and SHADRIN
HERRING, as representatives of a class
of similarly situated persons, and on
behalf of the A360, Inc. Profit Sharing
Plan, formerly known as the A360, Inc.
Employee Stock Ownership Plan,

        Plaintiffs,

v.

GERALD SHAPIRO, SCOTT
BRINKLEY, ARGENT TRUST
COMPANY, A360 HOLDINGS LLC,
and John and Jane Does 1-10,

        Defendants.

Case No. 1:23-cv-03236-VMC

## LR 7.1(D) FONT COMPLIANCE CERTIFICATION

The undersigned counsel certifies that the foregoing **DEFENDANTS'**
**RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND**
**TO STAY PURSUANT TO SECTIONS 3 AND 4 OF THE FEDERAL**
**ARBITRATION ACT** was prepared using Times New Roman 14 point font in
accordance with Local Rule 5.1 of the United States District Court for the Northern
District of Georgia.

s/ Todd D. Wozniak
Todd D. Wozniak

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

EBONI WILLIAMS, DEBBIE
SHOEMAKER, PAULA MAYS, TINA
KOVELESKY, and SHADRIN
HERRING, as representatives of a class
of similarly situated persons, and on
behalf of the A360, Inc. Profit Sharing
Plan, formerly known as the A360, Inc.
Employee Stock Ownership Plan,

           Plaintiffs,

    v.

GERALD SHAPIRO, SCOTT
BRINKLEY, ARGENT TRUST
COMPANY, A360 HOLDINGS LLC,
and John and Jane Does 1-10,

           Defendants.

Case No. 1:23-cv-03236-VMC

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel certifies that the foregoing **DEFENDANTS'**
**RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND**
**TO STAY PURSUANT TO SECTIONS 3 AND 4 OF THE FEDERAL**
**ARBITRATION ACT** was filed with the Clerk of Court using the CM/ECF system,
which will automatically send e-mail notification of such filing to Counsel of
Record.

s/ Todd D. Wozniak
Todd D. Wozniak

2