## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| Eboni Williams, Debbie Shoemaker, Paula Mays, Tina Kovelesky, and Shadrin Herring, as representatives of a class of similarly situated persons, and on behalf of the A360, Inc. Profit Sharing Plan, formerly known as the A360, Inc. Employee Stock Ownership Plan, <br><br> Plaintiffs, <br><br> v. <br><br> Gerald Shapiro, Scott Brinkley, Argent Trust Company, A360 Holdings LLC, and John and Jane Does 1-10, <br><br> Defendants. | Case No. 1:23-cv-03236-VMC |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY PURSUANT TO SECTIONS 3 AND 4 OF THE FEDERAL ARBITRATION ACT

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND....................................................................................2

ARGUMENT ..........................................................................................................4

I.    THE ARBITRATION CLAUSE ELIMINATES STATUTORY REMEDIES AND IS THUS INVALID..............................................................................4

    A.    The arbitration clause eliminates remedies that ERISA guarantees and bars participants from obtaining Plan-wide relief................................7

        1.    The arbitration clause eliminates Plaintiffs' right to recover losses to the Plan and disgorge Defendants' profits to the Plan................8

        2.    The "incidental" injunctive relief permitted by the arbitration clause still bars equitable remedies authorized by ERISA. ...........11

    B.    Because the arbitration clause eliminates remedies and bars relief with Plan-wide effect, it conflicts with ERISA and is invalid. ...................13

    C.    Defendants cannot save the arbitration clause by re-casting its elimination of statutory remedies as a "class-action" waiver. ............16

II.    PLAINTIFFS DID NOT ENTER INTO A VALID AGREEMENT TO ARBITRATE..................................................................................................19

    A.    Parties cannot be compelled to arbitrate when they have not agreed to do so, even for claims on behalf of an ERISA plan............................19

        1.    The FAA requires the consent of both parties to arbitrate.............19

        2.    Nothing in ERISA overrides the FAA's consent requirement. .....20

    B.    Plaintiffs are not bound by an amendment enacted after they left employment with A360.......................................................................23

III.    THE ARBITRATION CLAUSE IS NOT SEVERABLE.............................25

IV.    THE FEE-SHIFTING PROVISION VIOLATES ERISA § 502(**g**). ............25

CONCLUSION.....................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)........................................................................ 4, 14

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)............................................................................ 18

*Avecilla v. Live Nation Ent., Inc.*,
2023 WL 5354401 (C.D. Cal. Aug. 7, 2023) ...................................... 15

*Barrett v. Fox & Grove, Chartered*,
2002 WL 31761410 (N.D. Ill. Dec. 9, 2002)....................................... 24

*Berkelhammer v. ADP TotalSource Group, Inc.*,
74 F.4th 115 (3d Cir. 2023) ............................................................... 22

*Browe v. CTC Corp.*,
15 F.4th 175 (2d Cir. 2021) ................................................................. 9

*Brown on behalf of Henny Penny Corp. Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*,
2018 WL 3546186 (S.D. Ohio July 24, 2018)................................ 22, 24

*Brundle on behalf of Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*,
919 F.3d 763 (4th Cir. 2019), *as amended* (Mar. 22, 2019)................... 9

*Burnett v. Prudent Fiduciary Servs. LLC*,
2023 WL 387586 (D. Del. Jan. 25, 2023), *report and recommendation adopted*,
2023 WL 2401707 (D. Del. Mar. 8, 2023), *aff'd*, 2023 WL 6374192 (3d Cir. Aug. 15, 2023) ............................................................................................. 7

*Carr v. First Nationwide Bank*,
816 F. Supp. 1476 (N.D. Cal. 1993) .................................................. 24

*Casey v. Reliance Tr. Co.*,
2019 WL 7403931 (E.D. Tex. Nov. 13, 2019)............................... 22, 24

*Cedeno v. Argent Tr. Co.*,

2021 WL 5087898 (S.D.N.Y. Nov. 2, 2021)..........................................................7

*Chesemore v. Alliance Holdings, Inc.*,
   276 F.R.D. 506 (W.D. Wisc. 2011) ................................................................11

*Cigna Corp. v. Amara*,
   563 U.S. 421 (2011)........................................................................................12

*Coan v. Kaufman*,
   457 F.3d 250 (2d Cir. 2006) ....................................................................18, 19

*Coleman v. Brozen*,
   2023 WL 4498506 (N.D. Tex. July 12, 2023)..................................................6

*Conley v. Pitney Bowes*,
   34 F.3d 714 (8th Cir. 1994) ...........................................................................23

*Dash v. RBC Bank (USA)*,
   745 F.3d 1111 (11th Cir. 2014) .....................................................................21

*Dorman v. Charles Schwab Corp.*,
   780 F. App'x 510 (9th Cir. Aug. 20, 2019) ...................................................15

*Douglas v. Johnson Real Est. Invs., LLC*,
   2011 WL 13177544 (N.D. Ga. Oct. 11, 2011), *aff'd,* 470 F. App'x 823 (11th Cir.
   2012) ...............................................................................................................22

*Eaves v. Penn*,
   587 F.2d 453 (10th Cir. 1978) .................................................................11, 15

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018).......................................................................17, 18, 23

*First Nat. Bank of Chicago as Tr. Of Institutional Real Est. Fund F v. ACCO USA,
Inc.-IBT Ret. Plan*,
   842 F. Supp. 311 (N.D. Ill. 1994).................................................................12

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991)...................................................................................17, 18

*Gonzalez v. UBS Fin. Servs., Inc.*,

2023 WL 3952983 (D.P.R. June 12, 2023) ............................................................ 22

*Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.*,
    817 F.3d 857 (3d Cir. 2016) ................................................................... 20

*Hardt v. Reliance Standard Life Ins. Co.*,
    560 U.S. 242 (2010) ................................................................................ 25

*Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*,
    59 F.4th 1090 (10th Cir. 2023), *cert. denied*, No. 23-30, 2023 WL 6558426 (U.S.
    Oct. 10, 2023) ..................................................................... 6, 15, 16, 17

*Hawkins v. Cintas Corp.*,
    32 F.4th 625 (6th Cir. 2022) .......................................................... 21, 24

*Henry on behalf of BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v.
Wilmington Tr. NA*,
    72 F.4th 499 (3d Cir. 2023) .......................................................... 5, 6, 15

*Hensiek v. Bd. of Directors of Casino Queen Holding Co.*,
    514 F. Supp. 3d 1045 (S.D. Ill. 2021) ................................................. 22

*Holmes v. Baptist Health S. Fla., Inc.*,
    2022 WL 180638 (S.D. Fla. Jan. 20, 2022) ................................... 15, 16

*Hudson v. P.I.P. Inc.*,
    793 F. App'x 935 (11th Cir. 2019) ........................................................ 7

*Hurd v. Illinois Bell Tel. Co.*,
    234 F.2d 942 (7th Cir. 1956) ................................................................ 23

*Kemmerer v. ICI Americas Inc.*,
    70 F.3d 281 (3d Cir. 1995) ................................................................... 24

*Klay v. All Defendants*,
    389 F.3d 1191 (11th Cir. 2004) ............................................................ 20

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019) ......................................................................... 19

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,

iv

552 U.S. 248 (2008) ........................................................................ 8, 10, 16

*Lloyd v. Argent Tr. Co.*,
2022 WL 17542071 (S.D.N.Y. Dec. 6, 2022) ........................................ 7

*Massachusetts Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) .......................................................................... 8, 25

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) .............................................................................. 14

*Ortiz v. Am. Airlines, Inc.*,
5 F.4th 622 (5th Cir. 2021) .................................................................... 9

*Osberg v. Foot Locker, Inc.*,
862 F.3d 198 (2d Cir. 2017) ................................................................ 12

*Paladino v. Avnet Comp. Techs.*,
134 F.3d 1054 (11th Cir. 1998) .............................................................. 7

*Parker v. Tenneco Inc.*,
2023 WL 5350565 (E.D. Mich. Aug. 21, 2023) ...................................... 6

*Platt v. Sodexo, S.A.*,
2023 WL 4832660 (C.D. Cal. July 25, 2023) ........................................ 22

*Robertson v. Argent Tr. Co.*,
2022 WL 2967710 (D. Ariz. July 27, 2022) .......................................... 25

*Sec'y U.S. Dep't of Labor v. Koresko*,
646 F. App'x 230 (3d Cir. 2016) .......................................................... 10

*Smith v. Bd. of Directors of Triad Mfg., Inc.*,
13 F.4th 613 (7th Cir. 2021) ............................... 4, 6, 13, 15, 16, 17, 21

*Smith v. Greatbanc Tr. Co.*,
2020 WL 4926560 (N.D. Ill. Aug. 21, 2020) ...................................... 6, 22

*Stolt-Nielsen S.A. v. AnimalFeeds, Int'l Corp.*,
559 U.S. 662 (2010) ......................................................... 18, 19, 21, 23

*Tennessee Tractor, LLC v. WH Administrators, Inc.*,
  2018 WL 1277751 (W.D. Tenn. Mar. 12, 2018)....................................................22

*Tibble v. Edison Int'l*,
  575 U.S. 523 (2015).................................................................................................15

*Viking River Cruises, Inc. v. Moriana*,
  142 S. Ct. 1906 (2022).................................................13, 14, 15, 16, 17, 21, 22, 23

*Virginia Sur. Co. v. Northrop Grumman Corp.*,
  144 F.3d 1243 (9th Cir. 1998) ...............................................................................12

*Wagner v. Stiefel Labs., Inc.*,
  2015 WL 4557686 (N.D. Ga. June 18, 2015)........................................................18

**Statutes**

29 U.S.C. § 1132(a) .....................................1, 5, 6, 7, 10, 11, 13, 15, 18, 19

29 U.S.C. § 1132(g) .....................................................................................25

29 U.S.C. § 1109.....................................1, 5, 6, 7, 8, 9, 10, 11, 13, 16, 17

**Rules**

Federal Rule of Civil Procedure 23 ....................................................18, 19

## **INTRODUCTION**

Defendants move to enforce an arbitration clause that prohibits specific substantive remedies available under ERISA. Court have been presented with materially identical arbitration clauses in many ERISA cases like this one. Every federal court of appeals (three to date) to consider a similar clause has refused to enforce it. Nearly every district court has as well. This Court should do the same.

This lawsuit challenges the sale of an ESOP's shares for less than fair market value. Plaintiffs allege that Defendants Shapiro and Brinkley orchestrated the sale of the A360 ESOP's shares to themselves and private equity investors for far less than those shares were worth, with the assistance of the ESOP's trustee. Plaintiffs bring this suit on behalf of the A360, Inc. Profit Sharing Plan pursuant to 29 U.S.C. §§ 1132(a) and 1109, which grant them the right to seek plan-wide relief for the fiduciary breaches at issue here, and to seek equitable relief such as rescission of the ESOP termination and reformation of the sale agreement to convey to participants the equity interests illegally transferred to Defendants.

In contravention of these express statutory rights, Defendants seek to compel Plaintiffs to arbitrate their ERISA claims "individually" and forego plan-wide relief, based on an arbitration provision belatedly inserted into the Plan document in a naked attempt to shield Defendants from liability. Defendants cannot nullify Plaintiffs' substantive statutory rights in this manner, as evidenced by the text of

ERISA and the vast majority of the case law on this question.

Moreover, Plaintiffs never consented to arbitration. The consent of each party to the arbitration is foundational to the enforcement of arbitration agreements under the Federal Arbitration Act ("FAA"). An employee benefit plan is a contract in which the employer offers certain benefits, and the employee accepts that offer by continuing to work for the company. But here, every Plaintiff had left employment with A360 before the arbitration clause was added to the Plan, so none of the Plaintiffs consented to arbitration. Absent any manifestation of consent to arbitration, Plaintiffs cannot be compelled to arbitrate their claims.

Because Defendants' arbitration clause impermissibly eliminates Plaintiffs' statutory rights under ERISA and Plaintiffs never consented to it, the arbitration clause is void and Defendants' motion should be denied.

## FACTUAL BACKGROUND

This case centers on the actions of Gerald Shapiro, the founder of A360, Inc. Shapiro had a case of seller's remorse after selling his company to its employees through the A360, Inc. Profit Sharing Plan (f/k/a A360 Inc. Employee Stock Ownership Plan) (the "Plan" or the "ESOP") in 2016. First Amended Complaint ("FAC"), Dkt. No. 69 ¶¶ 5, 9. Over the next few years, the value of A360 and similar "fintech" and "legal tech" companies skyrocketed. *Id.* ¶¶ 76-79. Rather than allow the company's employees to enjoy the benefits of ownership, Shapiro

and his longtime business associate engineered a below-market sale of the company from the ESOP to A360 Holdco—an entity owned by Shapiro, his associate, and private equity investors. *Id.* ¶¶ 9-10, 64-81. The Plan's "independent trustee" facilitated this illegal scheme. *Id.* ¶¶ 9, 82-85.

Having violated ERISA, Defendants Shapiro and Brinkley sought to prevent participants from holding them accountable. *Id.* ¶ 93. For the entire life of the ESOP, the terms of the Plan allowed participants to vindicate their rights in court. *Id.* ¶ 94. But Amendment Three to the Plan, made the same day the company was sold and the ESOP was terminated in 2019, changed that. *Id.* ¶ 95. Amendment Three added an arbitration clause that prohibited a participant from asserting any claim in a "representative capacity" or obtaining relief "on behalf of any individual or entity" other than themselves. *Id.* ¶ 96; Dkt. No. 44-1 ("Plan Document") at 76. ESOP participants were never told about Amendment Three. *Id.* ¶ 98.[1]

For three years after Amendment Three, the ESOP sat terminated. *Id.* ¶ 100. Then, in September 2022, Plaintiffs filed this lawsuit. *Id.* A month later, the long-

---

[1] Amendment Three included two other self-serving clauses: (1) a clause stating that a participant who unsuccessfully challenges the arbitration clause in court must pay "for all attorneys' fees, costs, and expenses" incurred by Defendants, *Id.* ¶ 96, and (2) a venue clause requiring all challenges to the arbitration clause be filed in this district rather than the Northern District of Illinois, where the Plan had always been administered. *Id.* ¶ 97. Judge Manish Shah of the Northern District of Illinois did not enforce the venue transfer clause, but granted Defendants' transfer motion under the *forum non conveniens* doctrine. Dkt. No. 31.

dead ESOP was purportedly amended once again—via Amendment Four—to "clarify" Amendment Three. *Id.* This zombie amendment sought to permit injunctive relief in arbitration, so long as that relief does not provide "additional benefits or monetary relief to any individual or entity other than" the individual plaintiff. *Id.* ¶ 101. As with Amendment Three, Defendants have never notified ESOP participants of Amendment Four. *Id.* ¶ 103. Each Plaintiff had left employment at A360 before either amendment was enacted. *Id.* ¶ 104. Plaintiffs had no knowledge of Amendments Three or Four, and did not consent to them. *Id.*

## **ARGUMENT**

### I.   **THE ARBITRATION CLAUSE ELIMINATES STATUTORY REMEDIES AND IS THUS INVALID.**

There is no "congressional command" precluding arbitration of ERISA claims. *Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 620 (7th Cir. 2021). But even though ERISA claims are *generally* arbitrable, an arbitration agreement is unenforceable where it would "prevent the 'effective vindication' of a federal statutory right." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013). Many federal courts have considered whether, consistent with this principle, a defendant can enforce an arbitration clause that is materially identical to the one at issue here, which prohibits important plan-wide remedies available under ERISA. Those courts have overwhelmingly agreed that the answer is "no," and have thus refused to compel arbitration. This Court should do the same.

As Defendants effectively concede, the arbitration clause says that Plan participants may not seek, and arbitrators may not award, plan-wide remedies. *See* Defendants' Renewed Motion to Compel Individual Arbitration ("Mot."), Dkt. No. 78 at 12 (participants may obtain relief "as to their individual Plan accounts only"). The clause prohibits any claim from being brought in a "representative capacity" and forbids any remedy "which has the purpose or effect of providing additional benefits or monetary relief . . . to any individual or entity other than the Claimant." Plan Document at 76. The clause only permits injunctive relief that has an "incidental impact" on other participants. *Id.* at 77. Singling out ERISA §§ 409 and 502(a)(2)—*i.e.* 29 U.S.C. §§ 1109 and 1132(a)(2)—the remedy is limited to "losses to the Claimant's individual Account," a "pro-rated" portion of disgorged profits, or "remedial or equitable relief" that is "not binding . . . with respect to any individual or entity other than the Claimant." *Id.* at 76-77.

Every federal court of appeals to have considered a similar arbitration clause has held it to be unenforceable. As the Third Circuit observed, "'[w]hat the statute permits, the [arbitration clause] precludes,'" and thus "the provision must give way to the statute." *Henry on behalf of BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA*, 72 F.4th 499, 507 (3d Cir. 2023) (citation omitted). As explained by the Tenth Circuit when it too refused to enforce a materially identical arbitration clause, an arbitration clause that prohibits relief that

"'has the purpose or effect of providing additional benefits or monetary or other relief to'" third parties conflicts with ERISA's statutory remedies, which expressly allow "forms of relief that would benefit the Plan as a whole." *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*, 59 F.4th 1090, 1106-07 (10th Cir. 2023), *cert. denied*, No. 23-30, 2023 WL 6558426 (U.S. Oct. 10, 2023). The Seventh Circuit has agreed, holding that where a "plan's arbitration provision . . . precludes certain remedies that §§ 1132(a)(2) and 1109(a) expressly permit," then "the 'effective vindication' exception bars application of the plan's arbitration provision to claims under § 1132(a)(2)." *Smith*, 13 F.4th at 622-23.[2]

Nearly every district court to have evaluated a similar arbitration clause has reached the same conclusion. This is because the law is clear an arbitration agreement "cannot eliminate forms of relief that are provided for by statute." *Parker v. Tenneco Inc.*, 2023 WL 5350565, at *5 (E.D. Mich. Aug. 21, 2023); *see also Coleman v. Brozen*, 2023 WL 4498506, at *11 (N.D. Tex. July 12, 2023) (refusing to enforce an arbitration provision because it "prevent[ed] Plaintiffs from seeking in arbitration relief specifically authorized by § 409(a)"); *Lloyd v. Argent*

---

[2] As in the present case, the arbitration clause in each of these cases provided that a participant "may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary" relief to anyone other than the plaintiff. *Henry on behalf of BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 2021 WL 4133622, at *2 (D. Del. Sept. 10, 2021) (quoting arbitration clause); *Harrison*, 59 F.4th at 1105; *Smith v. Greatbanc Tr. Co.*, 2020 WL 4926560, at *2 (N.D. Ill. Aug. 21, 2020) (quoting arbitration clause).

*Tr. Co.*, 2022 WL 17542071, at *4 (S.D.N.Y. Dec. 6, 2022) (holding arbitration

provision was "unenforceable" because it "require[d] individualized relief, thereby

preventing claimants from seeking remedies provided to them by [ERISA]").[3]

Defendants ask the Court to break with this near-universal consensus. The

Court should decline that invitation—particularly as the foregoing authority

accords with Eleventh Circuit precedent holding arbitration provisions to be

unenforceable on the same grounds. *See Paladino v. Avnet Comp. Techs.*, 134 F.3d

1054, 1062 (11th Cir. 1998) (holding an arbitration agreement unenforceable as to

the plaintiff's Title VII claims where it prohibited remedies available under Title

VII); *Hudson v. P.I.P. Inc.*, 793 F. App'x 935, 938 (11th Cir. 2019) (holding an

arbitration agreement unenforceable as to the plaintiff's Fair Labor Standards Act

claim where it prohibited remedies available under that statute).

### A.     The arbitration clause eliminates remedies that ERISA guarantees and bars participants from obtaining Plan-wide relief.

The arbitration clause prevents the effective vindication of Plaintiffs' ERISA

---

[3] *See also Cedeno v. Argent Tr. Co.*, 2021 WL 5087898, at *4 (S.D.N.Y. Nov. 2, 2021) (holding a similar arbitration provision is "invalid and unenforceable because it purports to limit the available remedies that ERISA explicitly provides"); *Burnett v. Prudent Fiduciary Servs. LLC*, 2023 WL 387586, at *6 (D. Del. Jan. 25, 2023), *report and recommendation adopted*, 2023 WL 2401707 (D. Del. Mar. 8, 2023), *aff'd*, 2023 WL 6374192 (3d Cir. Aug. 15, 2023) (refusing to enforce a similar arbitration provision because "elimination of the[ ] right to seek plan-wide monetary relief is an impermissible prospective waiver of [plaintiffs'] right to the statutory remedy provided by §§ 1109(a) and 1132(a)(2)").

rights twice over: first, as to monetary relief on behalf of the Plan, and second, as to the requested equitable relief.

### 1. The arbitration clause eliminates Plaintiffs' right to recover losses to the Plan and disgorge Defendants' profits to the Plan.

By limiting arbitration to a participant's "pro-rated" share of any monetary recovery, the clause improperly forecloses plan-wide monetary relief. ERISA permits an individual plan participant to seek recovery of "*any* losses *to the plan*" and disgorgement of "*any* profits . . . made through use of assets *of the plan*." 29 U.S.C. §1109(a) (emphasis added). As the statutory language reflects, this recovery "inures to the benefit of the plan *as a whole*." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) (emphasis added); *see also id.* at 142 n.9. "On their face, §§ 409(a) and 502(a)(2) permit recovery of *all* plan losses caused by a fiduciary breach." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 261 (2008) (Thomas, J., concurring) (emphasis in original). Congress was "primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan." *Russell*, 473 U.S. at 142.

Section 1109 thus provides a substantive remedial right—and imposes a substantive obligation on breaching fiduciaries—to restore the plan's losses, surrender profits from using the plan's assets, and fully redress the plan's injury. *See* 29 U.S.C. § 1109(a). Unlike the narrow constraints of the arbitration clause here, ERISA does not limit restoration of losses or disgorgement of profits to a

plaintiff's individual account. *See id.* Consistent with the plain language of § 1109, courts regularly allow individual participants like Plaintiffs to sue to restore *all* plan losses and disgorge *all* profits arising from the fiduciary breach.[4]

That is what Plaintiffs appropriately seek here: that Defendants restore all losses resulting from their fiduciary breaches and disgorge all profits to the Plan. Indeed, given the nature of Defendants' misconduct, Plaintiffs' share of the ESOP's losses cannot even be calculated without first determining the total losses suffered by the Plan; their injury is derivative of *the Plan* receiving less than fair market value for the company's stock in the ESOP transaction. But instead of allowing Plaintiffs to pursue this plan-wide relief, the arbitration clause forces an artificial, "individualized" remedy. After the arbitrator finds that Defendants breached their duties to the Plan and calculates the full losses to the Plan and profits that must be disgorged, the arbitrator would then order only that a tiny fraction of those amounts be awarded to Plaintiffs' individual accounts. Defendants would be allowed to keep all of the remaining ill-gotten gains.

That outcome cannot be squared with the text of § 1109. The statute calls for restoration of "any losses to the plan"—not to the participant. 29 U.S.C. § 1109(a).

---

[4] *See, e.g.*, *Browe v. CTC Corp.*, 15 F.4th 175, 199 (2d Cir. 2021); *Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 627 & n.7 (5th Cir. 2021); *Brundle on behalf of Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 919 F.3d 763, 781-82 (4th Cir. 2019), *as amended* (Mar. 22, 2019).

Likewise, the statute calls for restoration of "any profits . . . made through use of assets of the plan." *Id.* "The purpose of disgorgement of profits is deterrence, which is undermined if the fiduciary is able to retain proceeds from his own wrongdoing." *Sec'y U.S. Dep't of Labor v. Koresko*, 646 F. App'x 230, 245 (3d Cir. 2016). By limiting disgorgement to the individual plaintiff's pro-rated share, the arbitration clause impermissibly curtails this important statutory remedy.

Eliminating these remedies is enough to make the arbitration clause invalid, but the clause goes even further: because it bars plan participants from acting in any "representative" capacity, it altogether bars claims for breach of fiduciary duty under § 1132(a)(2) on behalf of the Plan. It is settled law that § 1132(a)(2) authorizes "plan participants, beneficiaries, and fiduciaries[ ] to bring actions *on behalf of a plan*." *LaRue*, 552 U.S. at 253 (emphasis added). A claim by a beneficiary under § 1132(a)(2) is thus by definition a "representative" claim. That is because § 1109(a), which describes the relief available under § 1132(a)(2), "characterizes the relevant fiduciary relationship as one with respect to a plan, and repeatedly identifies the 'plan' as the victim of any fiduciary breach and the recipient of any relief." *Id*. at 254 (cleaned up). As the Supreme Court reiterated in *LaRue*, § 1132(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries." *Id.* at 256. Accordingly, by barring any "representative" actions, the arbitration clause impermissibly bars § 1132(a)(2) claims altogether.

10

### 2. The "incidental" injunctive relief permitted by the arbitration clause still bars equitable remedies authorized by ERISA.

Even if Defendants were allowed to restrict Plaintiffs to "pro-rated" recovery of losses and disgorgement of profits, the arbitration clause would still be unenforceable because it forecloses Plaintiffs' ability to seek other ERISA remedies. Namely, there can be no "pro-rated" or "individual" rescission of the amendments terminating the Plan or reformation of the sale contract.

Plaintiffs seek two forms of relief that fall within the "equitable relief" available under §§ 1109 and 1132(a)(3). First, Plaintiffs request the rescission of the purchase agreement and reformation of the plan document pursuant to ERISA § 1109(a). FAC ¶¶ 161-62, Prayer for Relief ¶ L. Rescission of the sale of ESOP-owned securities is permissible under ERISA where ESOP assets are wasted in a self-interested transaction. *Eaves v. Penn*, 587 F.2d 453, 462-63 (10th Cir. 1978) (holding that ERISA affords "broad and flexible equitable remedies in cases involving breaches of fiduciary duty" and affirming district court's rescission of an ESOP's purchase-sale agreement as "the remedy most likely to protect the plan participants"); *Chesemore v. Alliance Holdings, Inc.*, 276 F.R.D. 506, 516-17 (W.D. Wisc. 2011). But rescission is prohibited under the arbitration clause because rescission applies to all parties to that transaction, which would necessarily include other participants, and would be binding on Defendants as to other participants. *See First Nat. Bank of Chicago as Tr. Of Institutional Real Est.*

11

*Fund F v. ACCO USA, Inc.-IBT Ret. Plan*, 842 F. Supp. 311, 319 (N.D. Ill. 1994).

Plaintiffs also seek reformation of both the amendments terminating the Plan and the contract selling the Plan's securities, to convey back to the Plan the compensation wrongfully conveyed to Defendants Shapiro and Brinkley. FAC ¶¶ 69, 71, Prayer for Relief ¶ L. Reformation of a plan or a contract selling plan assets is an appropriate equitable remedy under ERISA where a party's fraud "materially affected the substance of the contract." *Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 212 (2d Cir. 2017) (quoting *Cigna Corp. v. Amara*, 563 U.S. 421, 443 (2011)). Like rescission, reformation is prohibited by the arbitration clause, because the contract is reformed as to all parties to that agreement. *Virginia Sur. Co. v. Northrop Grumman Corp.*, 144 F.3d 1243, 1248 (9th Cir. 1998).

This conclusion is not altered by the recent Plan amendment permitting injunctive relief that has an "incidental impact" on other Plan participants. The arbitration agreement continues to prohibit relief that conveys "additional benefits or monetary relief to any individual or entity other than" the individual plaintiff. FAC ¶ 101. Defendants confirm that, even with the added clause, the arbitration agreement continues to "prohibit relief that would provide additional *monetary* benefits to a person other than the claimant." Mot. at 24. The Plan-wide remedies Plaintiffs seek would have more than an "incidental impact" on other Plan participants and would provide them monetary benefits. Rescission of the Plan's

termination would restore A360 shares to every participant's account, while

reformation would similarly convey to participants the equity interests in A360

Holdco wrongfully transferred to Shapiro and Brinkley as part of the Plan's

termination. Both remedies are thus barred by the arbitration clause, and

Defendants conspicuously do not contend otherwise in their brief.[5]

### B.     Because the arbitration clause eliminates remedies and bars relief with Plan-wide effect, it conflicts with ERISA and is invalid.

Because Plaintiffs seek remedies that are authorized by ERISA but

prohibited by the arbitration clause, that clause is invalid. *See Smith*, 13 F.4th at

621 ("[W]hat the statute permits, the plan precludes."). The Supreme Court's

recent decision in *Viking River* makes clear that a valid arbitration clause "does not

alter or abridge substantive rights; it merely changes how those rights will be

processed." *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 (2022).

And *Viking River* further confirms that a party's right to bring a representative

action on behalf of a single principal such as a corporation or (as here) a trust, is a

"substantive" right. *Id.* at 1919-23.

*Viking River* reiterates what the Supreme Court has said repeatedly: that an

---

[5] The arbitration clause also prohibits accounting for profits, constructive trust, and equitable lien—equitable remedies that Plaintiffs are entitled to (and do) seek under §§ 1132(a)(2) and (a)(3). These remedies, which must necessarily be binding with respect to the Plan and/or all participants, do not constitute injunctive relief and in any event have more than "incidental impact" on the Plan and other participants.

arbitration provision is invalid if it acts as a "'prospective waiver of a party's *right to pursue* statutory remedies.'" *Am. Express*, 570 U.S. at 236 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)) (emphasis in original). And "[t]hat would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." *Id.* The Supreme Court has repeatedly stated the FAA does not require enforcement of arbitration clauses that prevent plaintiffs from asserting their substantive statutory rights. *Viking River*, 142 S. Ct. at 1919, 1923; *Mitsubishi Motors*, 473 U.S. at 637 & n.19; *Am. Express*, 570 U.S. at 236.

Defendants' footnoted discussion of *Viking River* ignores the critical distinction that the Supreme Court drew between waivers of procedural devices for collective actions and waivers of traditional *non*-class representative actions, like "trustee actions." *Viking River*, 142 S. Ct. at 1922. The Court explained that "[n]on-class representative actions in which a single agent litigates on behalf of a single principal are part of the basic architecture of much of *substantive* law." *Id.* (emphasis added). The FAA does not require that "all forms of representative standing" be "waivable by contract" and accordingly does not "mandat[e] enforcement of waivers of standing to assert claims on behalf of absent principals." *Id.* at 1922. A plan participant's action on behalf of a plan under § 1132(a)(2), to recover the plan's losses, is exactly this kind of "familiar" "single-agent, single

14

principal" action. It is essentially a trustee action. *See, e.g.*, *Tibble v. Edison Int'l*, 575 U.S. 523, 528-30 (2015); *Eaves*, 587 F.2d at 462–63.

As discussed above, nearly every court to have considered the issue has held that the foregoing principles preclude enforcement of an arbitration agreement like that before the Court. *See supra* at 5-7.

The authorities cited by Defendants are all inapposite or faulty. For example, Defendants rely on the Ninth Circuit's unpublished opinion in *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. Aug. 20, 2019) ("*Dorman II*"). Mot. at 14, 19–20. But the *Dorman* arbitration provision did not limit the remedies the plaintiff could pursue in arbitration. *See Smith*, 13 F.4th at 623. It did not, for example, limit disgorgement to the plaintiff's *pro rata* share. *Dorman* thus has no bearing on the arbitration provision here, which bars recovery by "any individual or entity other than the" Plaintiffs. Plan Document at 76; *see also Avecilla v. Live Nation Ent., Inc.*, 2023 WL 5354401, at *4-5 (C.D. Cal. Aug. 7, 2023) ("*Smith*, *Henry*, and *Harrison* do not conflict with *Dorman II*.").

Defendants also rely on *Holmes v. Baptist Health S. Fla., Inc.*, 2022 WL 180638 (S.D. Fla. Jan. 20, 2022). Mot. at 20-24. *Holmes* concluded waiver of plan-wide monetary relief must be permissible because parties can waive "the right to bring a class action in arbitration." 2022 WL 180638, at *3. Not only is this case out of step with the vast weight of authority, *Holmes* predates *Viking River*, in

which the Supreme Court clarified that bringing a representative action such as a "trustee action" is a substantive right, and that differences between representative and class actions "preclude any straightforward application of our precedents involving . . . class-action waivers." *Viking River*, 142 S. Ct. at 1920. Moreover, Section 1109's plan-wide remedies are different in nature than a procedural class-action mechanism. *See Harrison*, 59 F.4th at 1110-11; *see also supra* at 8-9.[6]

Finally, Defendants note that *Smith* opined that *LaRue* means that "individualized arbitration [is not] inherently incompatible with ERISA." 13 F.4th at 622; Mot. at 16-17, 20. That phrase was *dicta*, and simply stands for the same proposition the Supreme Court adopted a year later in *Viking River*: that while parties may contract to resolve representative actions in bilateral arbitration, they cannot be forced to waive the representative action itself. *Viking River*, 596 U.S. at 1919-23; *Smith*, 13 F.4th at 622 (employees may bargain away some forms of "plan-wide representation" so long as they may obtain all "plan-wide remedies" that ERISA authorizes); *supra* at 9 & n.4 (explaining that courts have allowed individual participants to recover plan-wide relief without using Rule 23).

### C.   Defendants cannot save the arbitration clause by re-casting its elimination of statutory remedies as a "class-action" waiver.

Defendants spend much of their brief defending class-action waivers and

---

[6] The *Holmes* court also stated the Eleventh Circuit had never invoked "effective vindication" (2022 WL 180638, at *2), yet it has done so twice. *See supra* at 7.

arguing that Supreme Court precedent allows a plaintiff to waive class-action

procedures and agree to individualized arbitration of disputes. But class-action

waivers are not the reason courts have invalidated arbitration clauses like this.

*Smith*, 13 F.4th at 622 (the "problem" is "not that the plan funnels its participants

away from class actions"); *Harrison*, 59 F.4th at 1109 ("It is not [the arbitration

clause's] prohibition on class actions that is problematic.").

 The key point Defendants miss is that a participant's right to pursue

remedies that bind the plan administrator and redress injury to the plan is not the

same as class-action or claim joinder procedures that "unite a massive number of

claims in a single-package suit." *Viking River*, 142 S. Ct. at 1924. The cases in

which courts have awarded plan-wide relief to individual plaintiffs, *see supra* at 9

& n.4, confirm this critical point: § 1109 is not a mere procedural mechanism for

combining multiple individual claims into one action. A single plaintiff can obtain

full plan-wide relief because the plaintiff is acting on behalf of the plan itself. *See,

e.g.*, *Viking River*, 142 S. Ct. at 1922-24 (distinguishing between representative

actions arising out of a single transaction and the class-action-like aggregation of

multiple unrelated claims).

 Because Defendants conflate ERISA's plan-wide remedies with class action

procedures, their reliance on *Epic Systems* and *Gilmer* is misplaced. Mot. at 7-8,

13-14, 18, 25. The only issue in *Epic Systems* was whether the National Labor

Relations Act prohibited contractual agreements for individualized arbitration. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018). Those arbitration agreements did not take away statutory remedies or causes of action. The same was true in *Gilmer*, where the Court expressly noted the arbitration agreements did "not restrict the types of relief an arbitrator may award." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991). Defendants commit the same error in citing *Stolt-Nielsen S.A. v. AnimalFeeds, Int'l Corp.*, 559 U.S. 662 (2010) and *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). Mot. at 13-14.

Defendants' reliance on *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006) and *Wagner v. Stiefel Labs., Inc.*, 2015 WL 4557686 (N.D. Ga. June 18, 2015) is also misplaced. Mot. at 22. Neither case addressed the enforceability of an arbitration clause. *Coan* simply held that a plan participant in an action under § 1132(a)(2) must "take adequate steps under the circumstances properly to act in a 'representative capacity on behalf of the plan.'" 457 F.3d at 261 (citation omitted). Similarly, *Wagner* granted summary judgment as to plaintiffs' claims under § 1132(a)(2) because plaintiffs had not moved for class certification and had "done nothing to notify or otherwise involve other Plan participants" by that time. 2015 WL 4557686, at *13. *Coan* explained the relevant distinction: while representational adequacy *could* be established by proceeding under Rule 23, it did not transform § 1132(a)(2) cases into mandatory class actions. To the contrary,

18

"plan participants need not always comply with Rule 23 to act as a representative" in an action brought on behalf of the plan. *Coan*, 457 F.3d at 261.

## II. PLAINTIFFS DID NOT ENTER INTO A VALID AGREEMENT TO ARBITRATE.

Beyond eliminating statutory remedies, which is sufficient to resolve the instant motion, the arbitration clause is unenforceable for two additional reasons. First, Plaintiffs did not even have notice of the clause until after they filed suit, so they cannot possibly have agreed to it. Second, Plaintiffs had left employment at A360 well before the arbitration clause was added to the plan document, so the clause was never a part of Plaintiffs' unilateral contracts with A360.

### A. Parties cannot be compelled to arbitrate when they have not agreed to do so, even for claims on behalf of an ERISA plan.

#### 1. The FAA requires the consent of both parties to arbitrate.

"The first principle that underscores all of [the Supreme Court's] arbitration decisions is that arbitration is strictly a matter of consent." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) (cleaned up). The Supreme Court has been unwavering on this point, emphasizing that "the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A.*, 559 U.S. at 681 (citation omitted). Although consent may manifest itself in a variety of ways and the provision need not result from an arm's-length transaction, there must at least be *some* indication

that both sides of the transaction agreed an arbitrator should resolve the dispute.

Because the FAA requires the consent of both parties to arbitrate, courts have repeatedly rejected attempts to impose arbitration or modify its scope unilaterally.[7] This touchstone FAA principle means that Defendants cannot force Plaintiffs to arbitrate if they have not agreed to arbitrate.

Plaintiffs did not agree to arbitrate. Indeed, they couldn't have. The arbitration clause was added to the Plan simultaneous with the Plan's termination, so no one ever participated in the Plan while the arbitration clause was in effect. Plan Document at 67, 70. As Defendants concede, Plaintiffs not only did not consent, "Plaintiffs were not 'notified' of Amendments Three or Four." Mot. at 6. While other cases may present hard questions about what constitutes consent, this case is straightforward: no one contends Plaintiffs consented.

### 2. Nothing in ERISA overrides the FAA's consent requirement.

Defendants argue that ERISA creates a special rule where, despite everything the Supreme Court has said about the FAA, a party *can* be coerced into arbitration. Specifically, they contend that ERISA implicitly overrides the FAA's consent requirement and makes individual consent unnecessary. Mot. at 5-9. But

---

[7] *See, e.g.*, *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) ("In the absence of an agreement to arbitrate, a court cannot compel the parties to settle their dispute in an arbitral forum."); *Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 865 (3d Cir. 2016).

the Plan's consent is a necessary condition to arbitrate, not a sufficient condition. *See Hawkins v. Cintas Corp.*, 32 F.4th 625, 636-37 (6th Cir. 2022).

ERISA claims are arbitrable under the FAA. *See Smith*, 13 F.4th at 620. The backstop to the FAA's mandate, however, is the requirement of mutual consent between the parties to the arbitration. *See Stolt-Nielsen*, 559 U.S. at 682 ("parties' agreement to forgo the legal process and submit their disputes to private dispute resolution" is critical); *Viking River*, 142 S. Ct. at 1918 (FAA protects "right to arbitrate based on an *agreement*"). Using other sources of law "to coercively impose arbitration" contravenes "the first principle" of "FAA jurisprudence: that arbitration is strictly a matter of consent." *Viking River*, 142 S. Ct. at 1918 (cleaned up). And while "doubts concerning the *scope* of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning *whether* an agreement to arbitrate has been made." *Dash v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (emphasis added) (cleaned up).

Defendants argue that participant consent is irrelevant because ERISA makes plan amendments binding without notice or consent. Mot. at 6-7. The mere fact that the amendment may be permitted under ERISA cannot override what the FAA mandates: that "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *Viking River*, 142 S. Ct. at 1923 (citation omitted). Even though Plaintiffs represent the Plan, each is required to

have a personal stake in the lawsuit, and the consent of the Plan cannot stand in for

their consent. This is especially true where the arbitration clause *prohibits Plan-*

*wide relief*. In other words, the Plan cannot simultaneously consent to arbitration

and then be prohibited from participating in it.[8] Defendants' conduct is a case

study in the abuses that would result from the rule they propose. Defendants

violated ERISA by seizing the ESOP's shares for less than fair value, and

simultaneously restricted participants' legal redress to an arbitration limited to

individual remedies.

Where consent is lacking in this manner, courts have regularly declined to

compel arbitration of ERISA and other claims.[9] *See also Stolt-Nielsen*, 559 U.S. at

---

[8] This distinguishes *Berkelhammer v. ADP TotalSource Group, Inc.*, 74 F.4th 115, 120 (3d Cir. 2023), where the Plan's consent to arbitration was found binding on participants. Mot. at 6. The agreement in *Berkelhammer* authorized all forms of relief, and there was no indication Plaintiffs had left employment before the agreement to arbitrate was entered into. *Berkelhammer*, 74 F.4th at 117 n.2.

[9] *See Douglas v. Johnson Real Est. Invs., LLC*, 2011 WL 13177544, at *2 (N.D. Ga. Oct. 11, 2011), *aff'd,* 470 F. App'x 823 (11th Cir. 2012) ("In the context of an arbitration agreement between an employer and employee, an agreement is invalid when the employer can unilaterally modify the agreement without providing notice to the employee; when such a scenario arises, the employer can simply choose not to perform and thus the promise to arbitrate is merely illusory."); *see also Platt v. Sodexo, S.A.*, 2023 WL 4832660, at *4-5 (C.D. Cal. July 25, 2023); *Gonzalez v. UBS Fin. Servs., Inc.*, 2023 WL 3952983, at *3 (D.P.R. June 12, 2023); *Hensiek v. Bd. of Directors of Casino Queen Holding Co.*, 514 F. Supp. 3d 1045, 1053–54 (S.D. Ill. 2021); *Greatbanc Tr. Co.*, 2020 WL 4926560, at *3; *Casey v. Reliance Tr. Co.*, 2019 WL 7403931, at *35 (E.D. Tex. Nov. 13, 2019); *Brown on behalf of Henny Penny Corp. Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 2018 WL 3546186, at *5 (S.D. Ohio July 24, 2018); *Tennessee Tractor, LLC v. WH Administrators, Inc.*, 2018 WL 1277751, at *3 (W.D. Tenn. Mar. 12, 2018).

681 ("arbitration 'is a matter of consent, not coercion'") (citation omitted); *Viking River*, 142 S. Ct. at 1918 (the FAA would not protect a "right to arbitrate based on an *agreement* if [other sources of] law could be used to coercively impose arbitration in contravention of the first principle of our FAA jurisprudence: that arbitration is strictly a matter of consent") (cleaned up).

Simply put, Defendants cannot agree to arbitration for both themselves and Plan participants. The only way to avoid this problem—to "harmonize[]" ERISA and the FAA—is to require participants' consent to arbitration as well. *Epic Sys.*, 138 S. Ct. at 1624. Otherwise, unilaterally-imposed arbitration would be permitted under ERISA, but forbidden in every other context.

### B.    Plaintiffs are not bound by an amendment enacted after they left employment with A360.

Even if a plan could theoretically consent on a participant's behalf, the rules of unilateral contracts prohibit such a holding here. Like all ERISA plans, the ESOP was a "unilateral contract" to which participants consented by continuing employment. *Hurd v. Illinois Bell Tel. Co.*, 234 F.2d 942, 946 (7th Cir. 1956).[10] An employee is entitled to the plan terms in effect when her employment ends, as that is when the employee has completed her performance under the plan/contract. *See*

---

[10] Contrary to Defendants' representation, in *Conley v. Pitney Bowes*, 34 F.3d 714, 717 (8th Cir. 1994), the court noted that "pension and benefit plans are typically characterized as being unilateral contracts."

*Kemmerer v. ICI Americas Inc.*, 70 F.3d 281, 287 (3d Cir. 1995); Plan Document at 11, 17. Accordingly, when employment ends, the employee's pension rights vest. *Kemmerer*, 70 F.3d at 287 (after employment is terminated, "unilateral adoption of an amendment which is then used to defeat or diminish the employee's fully vested rights under the governing plan document is . . . ineffective").[11] "The notion of protecting vested rights prevents one party to a contract from unilaterally changing the terms of performance after that performance has become due." *Id*. at 956. Permitting a fiduciary to unilaterally alter how participants can bring claims for breach of fiduciary duty "would, in a sense, be allowing the fox to guard the henhouse." *See Brown*, 2018 WL 3546186, at *5 (cleaned up).

Courts have refused to enforce arbitration clauses enacted after a participant ceases employment. *See, e.g.*, *id.* at *5 (when an employee has "ceased all participation in the plan[,] . . . Plaintiff is not bound by the Arbitration Procedure"); *Hawkins v. Cintas Corps.*, 2021 WL 274341, at *7 (S.D. Ohio Jan. 27, 2021), *aff'd* 32 F.4th 625 (6th Cir. 2022); *Casey*, 2019 WL 7403931, at *35. Here, Defendants admit that "the Amendments came into effect after each Plaintiff had left employment." Mot. at 6. Accordingly, Plaintiffs are not bound by the arbitration clause.

---

[11] *See also Carr v. First Nationwide Bank*, 816 F. Supp. 1476, 1488 (N.D. Cal. 1993); *Barrett v. Fox & Grove, Chartered*, 2002 WL 31761410, at *3 (N.D. Ill. Dec. 9, 2002).

## III.   THE ARBITRATION CLAUSE IS NOT SEVERABLE.

Defendants do not dispute—nor could they—that if one part of the arbitration clause is found invalid, the arbitration clause provides that the whole clause is void. Plan Document at 77. Thus, the Court may not sever the limits on remedies and order arbitration.

## IV.   THE FEE-SHIFTING PROVISION VIOLATES ERISA § 502(g).

The contractual fee-shifting provision is preempted by § 1132(g)(1) of ERISA. *Robertson v. Argent Tr. Co.*, 2022 WL 2967710, at *11 (D. Ariz. July 27, 2022). Moreover, § 1102(g)(1) provides that a court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." A party must achieve a degree of success on the merits in order to receive fees in an ERISA action. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). A "purely procedural victory" does not qualify. *Id.* (citation and quotation marks omitted). ERISA's carefully reticulated statutory scheme precludes remedies not set forth in the statute. *See Russell*, 473 U.S. at 147 (noting that ERISA provides an explicit attorney's fee remedy). Prevailing on a motion to compel arbitration is not "some degree of success on the merits." Rather, it is a procedural victory. Thus, the fee-shifting provision is both preempted and void.

## <u>CONCLUSION</u>

Defendants' motion to compel arbitration should be denied.

Dated: October 13, 2023

**ENGSTROM LEE LLC**

/s/ Mark E. Thomson
Mark E. Thomson, MN No. 0398260*
Jennifer K. Lee, MN No. 0399012*
Carl F. Engstrom, MN No. 0396298*
729 N. Washington Ave., Suite 600
Minneapolis, MN 55401
Telephone: (612) 305-8349
mthomson@engstromlee.com
jlee@engstromlee.com
cengstrom@engstromlee.com

**WENZEL FENTON CABASSA, P.A.**
Brandon J. Hill, FL No. 0037061*
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
bhill@wfclaw.com

**MORGAN & MORGAN, PA**
Marc Edelman, FL Bar No. 96342*
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
medelman@forthepeople.com

**JONES GRANGER**
Harry B. Bailey, III, GA No. 032105
1201 Peachtree Street NE, Suite 300
Atlanta, GA 30361
Telephone: (404) 870-9020
hbai@jonesgranger.com

*Admitted *Pro Hac Vice*

**ATTORNEYS FOR PLAINTIFFS**

26

## **LR 7.1(D) FONT COMPLIANCE CERTIFICATION**

The undersigned counsel certifies that the foregoing

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY PURSUANT TO SECTIONS 3 AND 4 OF THE FEDERAL ABRITRATION ACT**

was prepared using Times New Roman 14 point font in accordance with Local

Rule 5.1 of the United States District Court for the Northern District of Georgia.

/s/Mark E. Thomson
Mark E. Thomson

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 13th day of October, 2023, the

foregoing was electronically filed using the CM/ECF system, causing a Notice of

Electronic Filing to be transmitted to all counsel of record.

/s/Mark E. Thomson
Mark E. Thomson
